```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
KATHIA ALMEIDA,                          :
                                         :
                        Plaintiff,       :
                                         :        24cv5677 (DLC)
            -v-                          :
                                         :        OPINION AND
NYU LANGONE HOSPITALS,                   :           ORDER
                                         :
                        Defendant.       :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Kathia Almeida:

Justin Robert Marino
Stevenson Marino LLP
105 Maxxes Road, Suite 124
Melville, NY 11747

Jeffrey Robert Maguire
Stevenson Marino LLP
445 Hamilton Avenue, Suite 1500
White Plains, NY 10601

For defendant NYU Langone Hospitals:

Edward Cerasia II
Alison L. Tomasco
Cerasia Law LLC
165 Broadway, 23rd Floor
New York, New York 10006

DENISE COTE, District Judge:

Plaintiff Kathia Almeida has brought this action against

her former employer, NYU Langone Hospitals ("NYU"), alleging

discrimination, failure to accommodate, retaliation, and failure

to hire in violation of the Americans with Disabilities Act, 42

U.S.C. § 12101 et seq. ("ADA") and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 et seq. The parties have cross-moved for summary judgment. For the reasons set forth below, NYU's motion is granted, and Almeida's motion is denied.

## Background

The following facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted. NYU offered Almeida a nursing position in May 2017 in the Transplant Surgical Unit on the fourteenth floor of the Kimmel Pavilion ("KP14"). Shortly thereafter, Almeida was diagnosed with breast cancer. She informed NYU of the diagnosis and began work in February 2018 after completing chemotherapy. She later became a Senior Staff Nurse. In that role, she cared for acute and intensive-care unit patients recovering from heart surgery. Working on KP14 was difficult, physical work and the unit was short-staffed.

On October 2, 2021, Almeida injured her back while preventing a patient from falling. Her workers' compensation claim was approved shortly thereafter. On November 4, 2021, following an MRI, Almeida was diagnosed with Stage IV metastatic cancer to the spine. She was never able to return to her physically demanding job on KP14 following that diagnosis.

2

Shortly after receiving her diagnosis, Almeida requested either remote or "light duty" work.  NYU offered her a position in its Vaccination Center, but Almeida's oncologist, Dr. Rachel Sanford, advised against that assignment and instead supported a leave of absence.  In December 2021, Almeida applied for short-term disability ("STD") leave through NYU's insurer, New York Life Group ("NY Life").  Her application included a letter from Dr. Sanford stating that she was not cleared to work.  NY Life approved STD benefits through June 30, 2022, consistent with NYU's six-month disability-leave policy.

On June 14, 2022, Almeida notified NYU that she was still unable to perform her duties on KP14.  Her manager recommended that she either request a workplace accommodation or apply for an extension of her leave through NY Life.  Almeida applied for long-term disability ("LTD") benefits, which NY Life approved on July 15.

On June 22, 2022, Almeida applied for Social Security Disability Insurance ("SSDI") benefits.  In that application, Almeida stated that she "became unable to work because of [her] disabling condition on October 8, 2021," and that she remained disabled.  Her application for SSDI benefits was approved on July 17, 2022, retroactive to April 2022.

Ordinarily, NYU contacts employees approved for LTD benefits to determine whether they wish to resign or request an accommodation.  Due to apparent administrative failures, that conversation did not occur until seven months later, on February 17, 2023, when Beth Cooper from Employer and Labor Relations ("ELR") called Almeida.  On this call, Almeida informed Cooper that she wanted to return to work in a different capacity.  At that point, she had been on leave for more than sixteen months, during which NYU had kept her KP14 position vacant.

On March 31, 2023, Almeida submitted an accommodation form completed by Dr. Sanford.  The form requested remote work to accommodate Almeida's "impaired mobility, impaired range of motion, limited weight bearing," and inability to "sit or stand for more than 60 minutes at a time."  It is undisputed that Almeida's KP14 position could not be performed remotely or with those physical limitations.  Cooper therefore searched for other vacant nursing positions that might satisfy her restrictions but did not identify any remote nursing vacancy.

On May 2, Cooper informed Almeida that no remote nursing position had been identified.  Almeida then suggested two possibilities: a remote auditing role and an administrative role that she had once discussed with a former manager.  Cooper followed up on those leads but was unable to identify an

4

available position matching either description.  On May 18, Cooper advised Almeida that NYU was denying her remote work request because no open remote nursing positions existed. During that call, Almeida revised her requested accommodation, stating that she could work onsite once or twice per week in an administrative role and mentioned a research nurse position.

Thereafter, Austin Bender, Senior Director of ELR, began assisting Almeida in identifying alternative positions.  Bender informed Almeida that, while that process continued, NYU would maintain her health insurance coverage through the end of June.

On May 24, Almeida sent Bender a revised accommodation form and identified six positions for which she believed she was qualified.  In the revised form, dated May 19, Dr. Sanford recommended that Almeida "work from home or perform administrative work, such as telephone triage, research or patient intake," and stated that she needed to alternate sitting and standing every sixty minutes.  On May 17, however, Dr. Sanford had completed a Medical Request Form sent directly to her from NY Life, in which she stated that Almeida was not cleared to work with or without restrictions.[1]

---

[1] While Dr. Sanford signed and dated the form on May 17, it appears that it was faxed to NY Life on June 1.

On May 26, Bender forwarded the positions identified by Almeida to the relevant hiring managers and asked whether any of the positions -- or any other vacant positions they knew of -- would satisfy Almeida's restrictions, underscoring that he would "really" like to find Almeida a role.  Meanwhile, Bender told Almeida that NYU would terminate her employment so that KP14 could fill her former role, while continuing to explore whether another position might be available.  Almeida's employment was terminated on June 19, 2023, and NYU filled the KP14 role three days later.

Almeida's motion focuses on NYU's failure to hire her into three positions for which she sought consideration.  Each position is discussed below.

I.   Clinical Coordinator, RN POSH Navigator

On May 30, 2023, after Bender's outreach, Melissa McIntyre-Huggins, a talent acquisition specialist, contacted Almeida regarding the Clinical Coordinator, RN POSH Navigator position and forwarded Almeida's resume to the hiring manager.  The next day, the hiring manager informed McIntyre-Huggins that the team would not be interviewing Almeida because it had already completed its interviews and was prepared to extend an offer to another candidate.  The position was offered to that candidate later that day.  It is undisputed that no one on the hiring team

for the Clinical Coordinator Position knew that Almeida was seeking a workplace accommodation.

II.  Remote Time-Out Audit Role

On June 16, 2023, Bender emailed Almeida about a possible Remote Time-Out Audit role.  The role involved remotely monitoring surgical teams' adherence to the pre-procedure "time-out" checklist.  Generally, these audits are performed by employees in the Department of Quality and Patient Safety (the "Quality Department").  Bender later found out that, although nurses at NYU had occasionally performed those tasks temporarily as an accommodation while remaining employed by their home department, there was no vacant position in the Quality Department itself.  Almeida was therefore not interviewed.

III. Nurse Care Coordinator, World Trade Center Health Program

On May 31, 2023, Laura Atwood, another talent acquisition specialist at NYU, emailed Bender regarding the Nurse Care Coordinator position in NYU's World Trade Center Health Program (the "WTC Position").  The position involved care coordination and case management for 9/11 first responders.  After Bender shared the job description and physical requirements with Almeida, she confirmed her interest.

On June 1, Almeida interviewed with the recruiter, and on June 7, she participated in a first-round interview with the WTC

team.  At the time the team decided to interview Almeida, it was aware that she required an accommodation, including restrictions on sitting and standing, and did not view those restrictions as disqualifying.  Almeida advanced to a second-round interview and met with the program's medical director, Dr. Denise Harrison, on July 17.  During that interview, Almeida stated that she had been let go by NYU but did not explain the circumstances.  When the team later contacted Bender, he confirmed that Almeida was "[d]efinitely eligible for rehire."[2]

On August 9, 2023, the WTC team invited Almeida by email to a third-round interview.  Almeida responded by email that she would be out of town until September 1 visiting her mother, which she had previously mentioned to Dr. Harrison.  On September 5, Almeida emailed the team to schedule the interview.  On September 11, the team proposed an in-person interview for September 18.  Almeida did not respond to that email.  She contends that she never saw the

---

[2] On July 27, when the KP14 manager processed Almeida's termination in NYU's system, he accidentally marked her as "ineligible for rehire," with the reason being "discharge for cause."  The next day, the recruiter for the WTC Position noticed the error, which Bender then corrected.  There is no evidence that the WTC team itself knew about the error, or that it impacted Almeida's application for the role, as she was invited for a third-round interview on August 9, after the error was discovered and corrected.

email because it was routed to her junk folder and later deleted.

The WTC team interpreted Almeida's failure to respond as indicating that she was no longer interested in the position.  In the meantime, it continued to consider other applicants.  On September 29, Almeida followed up with a WTC team member about a third-round interview, but that team member was on vacation and did not immediately see the email.  On October 3, Almeida forwarded her outreach to Atwood, who shared it with the WTC team.

The WTC team considered offering Almeida a third interview, but ultimately moved forward with another candidate, Kristal Kim.[3]  Team members testified that they believed that Kim was a better fit for the role because she was training to become a nurse practitioner, and because Almeida had failed to timely respond to their interview outreach for a role in which responsiveness is important.  Almeida did not apply for any additional position at NYU thereafter.

Almeida filed this action against NYU on July 26, 2024. The complaint asserts claims of disability discrimination, retaliation, failure to accommodate, and failure to hire under

---

[3] Kim had interviews for the WTC Position on September 13, September 19, October 3, and October 9.

the ADA and the NYCHRL.  NYU filed an answer on October 1, 2024. The parties proceeded with discovery, which ended on October 7, 2025.

On December 8, 2025, NYU filed a motion for summary judgment on all claims.  In support of the motion, NYU submitted declarations from several NYU employees, transcripts from the depositions of Almeida and others, and documentary exhibits. That same day, Almeida cross moved for partial summary judgment on her discrimination and failure to accommodate claims only. In support of her motion, plaintiff included several deposition transcripts and documentary exhibits.  In opposing NYU's motion, Almeida consented to the dismissal of her retaliation claims. Both summary judgment motions became fully submitted on January 30, 2026.

## Discussion

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).

In employment discrimination actions, "an extra measure of caution is merited" in granting summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

The ADA prohibits discrimination "on the basis of disability" with respect to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination claims brought under the ADA are subject to the burden-shifting framework first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Tafolla v. Heilig, 80 F.4th 111, 118 (2d Cir. 2023). Under that framework, the plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If the

11

plaintiff meets her initial burden, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the challenged action.  Id. at 802.  If it does so, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.  Id. at 804.

The NYCHRL similarly prohibits an employer from discriminating against persons "in compensation or in terms, conditions or privileges of employment" because of their disability.  N.Y.C. Admin. Code § 8-107(1)(a)(3).  NYCHRL claims are analyzed "separately and independently" from any federal law claims because the NYCHRL sets a lower bar for actionable claims.  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013); see also Williams v. MTA Bus Co., 44 F.4th 115, 137 (2d Cir. 2022) (citation omitted) (also acknowledging the City's "broader" standards).

Almeida brings claims under the ADA and the NYCHRL for disability discrimination, failure to accommodate, and failure to hire.  For the reasons that follow, NYU is entitled to summary judgment on all claims.

I.  Judicial Estoppel

As an initial matter, NYU argues that Almeida is judicially estopped from pursuing her disability-based claims because, in

connection with her SSDI and LTD benefits applications, she and her physician represented that she was unable to work.

To prevail on her ADA claims, Almeida must show that, with or without reasonable accommodation, she can perform the essential functions of the position at issue.  42 U.S.C. § 12111(8).[4]  A plaintiff's prior statement that she is totally disabled can appear to negate an essential element of her disability discrimination claim, but it does not automatically estop such a claim.  Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999).  Rather, where there is an apparent inconsistency between a plaintiff's prior statements and her litigation position, the plaintiff "must proffer a sufficient explanation" for the conflict to survive summary judgment.  Id. at 806.

In determining whether judicial estoppel applies, courts must consider the contexts in which the contradictory statements were made "to determine if there is, in fact, direct and irreconcilable contradiction."  DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (citation omitted).  This inquiry reflects, in part, the fact that the Social Security Act

---

[4] By contrast, the NYCHRL places the burden of proof on the employer to show that an employee cannot perform the essential functions of the position at issue even with an accommodation. N.Y.C. Admin. Code § 8-107(15)(b).

does not account for the possibility of reasonable accommodation, whereas ADA liability turns on whether the plaintiff could work with such accommodation.  Cleveland, 526 U.S. at 803.  Accordingly, a "simple averment that one is disabled for the purposes of an SSDI application does not preclude the argument that one could, with reasonable accommodation, be gainfully employed."  DeRosa, 595 F.3d at 104.

Applying these principles, the record does not reflect a clear and irreconcilable inconsistency between Almeida's SSDI application and her litigation position.  The statements on which NYU relies were made in June 2022, when Almeida was on medical leave and undisputedly unable to work.  Her ADA and NYCHRL claims, by contrast, concern NYU's conduct in 2023, when Almeida informed NYU that she could perform certain administrative duties with reasonable accommodation.  Given the temporal gap and change in circumstances, the record does not establish the type of direct and irreconcilable contradiction required for judicial estoppel.  See Cleveland, 526 U.S. at 805 (acknowledging that a plaintiff's condition may change over time).

Moreover, Almeida's continued receipt of SSDI benefits while she sought a reasonable accommodation from NYU also does not establish an irreconcilable inconsistency.  An SSDI

14

applicant need not "refer to the possibility of reasonable accommodation when she applies for SSDI," id. at 803, and an improvement in one's condition that allows them to work will not necessarily terminate eligibility for SSDI benefits immediately. Id. at 805.

Dr. Sanford's inconsistent statements to NY Life and NYU in May 2023 also do not warrant the application of judicial estoppel in this case.  On May 17, Dr. Sanford completed a medical request form for NY Life in which she stated that Almeida was not cleared to work with or without restrictions. On May 19, however, Dr. Sanford completed a revised accommodation form for NYU, which Almeida emailed to Bender, indicating that Almeida could perform remote or administrative work.  Only Dr. Sanford's May 19 statement is consistent with Almeida's litigation position that she was able to work with a reasonable accommodation, which NYU failed to provide.

Although these statements are sufficiently inconsistent and contemporaneous to raise judicial estoppel concerns, there is no evidence that Almeida saw Dr. Sanford's May 17 statement at the time it was sent to NY Life or caused it to be sent to NY Life. To the contrary, documents suggest that NY life sent its medical request form directly to Dr. Sanford, who faxed it back to NY Life.  Judicial estoppel reaches only inconsistent positions

15

taken by the plaintiff herself.  See Kovaco v. Rockbestos-Suprenant Cable Corp., 834 F.3d 128, 139 (2d Cir. 2016).

Summary judgment is therefore not warranted on judicial estoppel grounds.

II.  Disability Discrimination and Failure to Accommodate Claims

A. ADA

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: (1) the employer is subject to the ADA, (2) the employee is disabled, (3) the employee was qualified to perform the job's essential functions, with or without reasonable accommodation, and (4) the employee suffered an adverse employment action because of her disability.  Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024).  For a failure to accommodate claim, the fourth element is met by showing the employer refused to make a reasonable accommodation.  Tudor v. Whitehall Cent. Sch. Dist., 132 F.4th 242, 246 (2d Cir. 2025).  In her motion papers, Almeida merges her discrimination and failure-to-accommodate claims, arguing that NYU's failure to accommodate her request for administrative work amounted to a discriminatory discharge.

The parties agree that Almeida could not perform her KP14 role even with an accommodation.  Almeida's ADA claims therefore

16

turn on whether, after accommodating approximately twenty months of medical leave, NYU was required to reassign Almeida to the WTC, Clinical Coordinator, or Remote Time-Out Audit Positions as a reasonable accommodation.  On this record, Almeida has not identified a reasonable accommodation that NYU was required to provide.

The ADA requires employers to "take certain affirmative steps to assist employees with disabilities," which include reasonably accommodating "the known physical or mental limitations of an otherwise qualified individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business."  Bey v. City of New York, 999 F.3d 157, 165 (2d Cir. 2021) (quoting 42 U.S.C. § 12112(b)(5)(A)).  "[T]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  Stevens v. Rite Aid Corp., 851 F.3d 224, 231 (2d Cir. 2017) (citation omitted).

Reassignment to a "vacant" position may, in some circumstances, constitute a reasonable accommodation.  Shannon v. New York City Transit Auth., 332 F.3d 95, 104 (2d Cir. 2003) (citing 42 U.S.C. § 12111(9)).  But the ADA does not require an employer to reassign an employee to a position that is not

vacant, nor create a new position to accommodate the employee.

McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 98 (2d

Cir. 2009).  In considering reassignment, employers are not

required to abandon their legitimate, nondiscriminatory hiring

policies.  See, e.g., Felix v. N.Y.C. Transit Auth., 154 F.

Supp. 2d 640, 655 (S.D.N.Y. 2001), aff'd, 324 F.3d 102 (2d Cir.

2003).

The record reflects that NYU endeavored to accommodate

Almeida in several ways.  After her diagnosis, NYU offered her

light duty work in its Vaccination Center.  It then accommodated

approximately twenty months of medical leave.  Towards the end

of that leave, it worked with Almeida to identify remote and

administrative roles that she could perform with her physical

limitations and encouraged the relevant hiring teams to consider

Almeida for those roles.

Almeida principally argues that NYU violated the ADA when

it failed to reassign her to "three suitable and vacant

positions" -- the Clinical Coordinator Position, the Remote

Time-Out Audit Role, and the WTC Position.  The record, however,

does not support that contention.  First, by the time Almeida

was referred for the Clinical Coordinator Position, the hiring

team was already prepared to extend an offer to another

candidate, which it did the next day.  Second, with respect to

the Remote Time-Out Audit role, the record shows that, although the tasks were occasionally assigned temporarily to employees as a light-duty arrangement, no vacant position existed in the relevant department.

Lastly, although the WTC Position was vacant, it also does not support a failure-to-accommodate claim. The WTC team knew of Almeida's restrictions and did not regard them as disqualifying. The team interviewed her twice and invited her to a third-round interview. The WTC team members testified that the process stopped there because Almeida did not respond to the team's September 11 scheduling email, a lapse that indicated she may lack the responsiveness that the role demanded. NYU was not obligated to set aside its legitimate, nondiscriminatory hiring practices when considering Almeida for this vacant role.

Almeida also argues that NYU failed to accommodate her when it terminated her employment while she remained under consideration for the WTC Position. But Almeida's discharge occurred approximately twenty months after she stopped working and several months into the interactive process. NYU was not required to hold her KP14 position open indefinitely while she sought alternative employment within the organization.

Almeida also argues that the record supports an inference of discrimination in the WTC team's hiring decision. First,

19

Almeida contends that Kim was less qualified than her because she did not speak Spanish, which was a preferred qualification for the role, had not previously worked at NYU, and had one poor reference.[5]  But NYU has articulated legitimate, nondiscriminatory reasons why Almeida was not hired for the WTC Position: Almeida's failure to respond to its September 11 email, and its belief that Kim's nurse practitioner training would benefit her in the role.  Almeida has offered no evidence from which a reasonable jury could conclude that those reasons were pretextual.

Second, Almeida points to Dr. Harrison's deposition testimony, in which she testified that, during Almeida's third-round interview, she would have inquired about how her physical requirements would play out in the role.  Almeida argues that this testimony reveals that Dr. Harrison was focused on the nature and severity of her disability in making her hiring decision.  Inquiring into an applicant's physical restrictions, however, is part of the interactive process and does not, on its own, reveal discriminatory animus toward Almeida.  In sum, this record does not raise a reasonable inference that Almeida's

---

[5] Almeida also points to Kim's request for a higher salary and lower score on the HR assessment given to external candidates. But both the request and assessment took place after Kim received the employment offer and thus could not have played a role in the team's decision to extend Kim an offer.

disability played any role in the ultimate decision to hire Kim for the WTC Position.  Accordingly, NYU is entitled to summary judgment on Almeida's ADA discrimination and failure-to-accommodate claims.

B. NYCHRL

Almeida also asserts claims under the NYCHRL for disability discrimination and failure to engage in cooperative dialogue. NYCHRL claims must be assessed "separately and independently from any federal . . . law claims."  Mihalik, 715 F.3d at 109. This is because the NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof."  N.Y.C. Admin. Code § 8-130.

To prevail on a disability discrimination claim under the NYCHRL, a plaintiff "need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her" disability.  Mihalik, 715 F.3d at 110 (citation omitted).  Moreover, in the disability-accommodation context, the employer bears the burden of showing that no safe and reasonable accommodation was available.  Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824, 835 (2014).  The NYCHRL also requires an employer to engage in a cooperative dialogue regarding a requested accommodation, and the failure to do so is independently actionable.  N.Y.C. Admin. Code § 8-107(28)(a).

21

Even under those more liberal standards, Almeida's NYCHRL discrimination and failure-to-engage claims fail.  The record does not permit a rational juror to conclude that NYU treated Almeida less well than other employees because of her disability.  To the contrary, the evidence shows that NYU accommodated a leave that lasted well beyond its six-month policy, searched for positions consistent with Almeida's restrictions, communicated with her over several months regarding possible alternative roles, and continued to consider her for positions even after her employment ended.

Moreover, Almeida has introduced insufficient evidence from which a jury could conclude that, by hiring Kim, the WTC team treated Almeida less well than Kim on account of her disability. The WTC team knew about Almeida's limitations from the outset of the hiring process and interviewed her twice, only ending the process after Almeida failed to respond to their September 11 email.

The record also does not support a failure-to-engage claim. As already discussed, the evidence shows that NYU engaged in a months-long cooperative dialogue regarding her requests for remote and administrative work.  NYU is therefore entitled to summary judgment on these claims as well.

22

III. Failure to Hire Claims

Almeida also asserts failure-to-hire claims under the ADA and NYCHRL based on NYU's failure to hire her for the WTC Position. Almeida acknowledges in her brief, however, that her failure to hire claims are "duplicative" of her failure to accommodate claims. Summary judgment on these claims is therefore granted in favor of NYU for the reasons already provided.

## Conclusion

NYU's December 8, 2025 motion for summary judgment is granted. Almeida's December 8, 2025 motion for partial summary judgment is denied. The Clerk of Court shall enter judgment for NYU and close the case.

Dated:    New York, New York
          April 24, 2026

_____
DENISE COTE
United States District Judge

23